## McGOURIN v. UNITED STATES.

(District Court, N. D. Florida. June 9, 1900.)

1. **COMMISSIONER'S FEES—METHOD OF COMPUTING FOLIOS IN DOCKET ENTRIES.**
An order of court requires each commissioner to keep a docket, in which should be entered the proceedings in a cause. Where it appears that these entries are not a mere recital, but a chronological entry of steps taken in the cause, the commissioner is entitled to charge 15 cents per folio, counting each separate entry with relation to a distinct step or proceeding in the case as a separate folio, although they may relate to the same case and be entered under the same caption.

2. **SAME—PER DIEM FOR HEARING.**
Paragraph 3, § 847, Rev. St., provided, "For hearing and deciding on criminal charge, five dollars a day for the time necessarily employed." Such section does not suggest any particular description of criminal charge for which such per diem is chargeable, and it must be accepted in its general sense, and include hearing on capias and bench warrant.

3. **SAME—FEES FOR COPIES OF SUBPŒNAS.**
A rule of court requiring the clerk to make copies of all process issued by the court, including subpœnas for witnesses, and providing that all persons on whom process is served shall have a copy thereof, is binding on a commissioner, and he is entitled to fees for copies of subpœnas issued by him in criminal cases to be heard before him.

4. **SAME—UNEXECUTED WRITS.**
If a warrant of arrest is returned by the marshal as "Not found," this is such a return as should be entered by the commissioner, and is a proper claim against the government.

5. **SAME—FILING COPIES OF AFFIDAVIT.**
A commissioner is entitled to charge the usual fee for filing copies of affidavits taken before other commissioners in the district, and which have been attached to warrants and returned before such commissioner.

6. **SAME—VERIFICATION TO DEPUTY MARSHALS' ACCOUNTS.**
Up to the time a commissioner is notified of a change in the regulations relative to the authentication of deputy marshals' accounts for charges and fees in cases heard before such commissioners, he is entitled to charge for fees earned relative to oath and jurat to such accounts, which had been theretofore required by regulations from the department.

7. **SAME—COPIES OF AFFIDAVITS.**
The act of August 18, 1894, requires all officers or magistrates issuing warrants to attach thereto a certified copy of the complaint; and, where this is done by the commissioner, he is entitled to the statutory fee for the copy.

8. **SAME—SEPARATE COMMITMENTS FOR DEFENDANTS JOINTLY ARRESTED.**
The circumstance that two or more defendants are arrested under the same warrant does not necessarily make it the duty of the commissioner to commit the said defendants jointly under the same temporary commitment. An allowance for separate writs, when issued, is deemed proper; and where the defendant has been brought before a commissioner, and committed pending the hearing, it is not necessary to issue another temporary commitment, where the hearing is continued, if the defendant is recommitted to the custody of the same jailer pending a further disposition of the cause.

9. SAME—PER DIEMS IN POOR-CONVICT CASES.

The act of May 28, 1896, prescribing a new set of fees for commissioners, applies only to the new set of commissioners to be appointed July 1, 1897; and the old fee bill applied to commissioners up to that time.

Buckner Chipley and Henry Bellinger, for petitioner.
John Eagan, U. S. Dist. Atty.

SWAYNE, District Judge. The petition shows that the petitioner has complied with all the requisites of the act of congress of March 3, 1887, conferring jurisdiction on this court to hear causes of this nature. The petition, having been dismissed before the entry of final judgment, was revived under the act of February 26, 1900, and now comes on for final hearing on petition, demurrer, plea, and agreement of facts. Taking up the schedules, as they are presented in the petition and demurred to in toto by the district attorney, I have arrived at the following conclusions relative to the legal principles applicable thereto:

Schedule A includes charges for docket entries relative to the issue of process, return, date of taking affidavit, date of hearing, disposition of cause, etc., in compliance with the order made by this court on the 5th day of May, 1881, made by Circuit Judge Pardee, whereby commissioners are required to keep such a docket, in which shall be entered the time of taking the affidavit, the issuing of process, the hearing, and orders relative to bail and discharge and binding over. Petitioner contends that, as each order or proceeding is entered in a separate paragraph, he is entitled to be paid at the rate of 15 cents per folio for each of such entries, under paragraph 8, § 828, Rev. St. which reads, "For entering any return, rule, order, continuance, judgment, decree or recognizance, or drawing any bond, or making any record, certificate, return or report, for each folio, fifteen cents" (which act is made applicable to commissioners by paragraph 7, § 847, Rev. St.), "and for any other service the same compensation as is allowed to clerks for like service."

Section 854, Rev. St., provides:

"The term 'folio' in this chapter shall mean one hundred words, counting each figure as a word. When there are over fifty and under one hundred words, they shall be counted as one folio; but a less number than fifty shall not be counted, except where the whole statute, notice, or order contains less than fifty words."

In the case of U. S. v. Allred, 155 U. S. 591, 15 Sup. Ct. 231, 39 L. Ed. 273, the supreme court held:

"A commissioner of a circuit court is an officer of the court, authorized by law, and is entitled to his fees * * * for making entries on the docket, in various cases, of the name of an affiant, his official position, if any, date of issuing warrant, name of defendant and witnesses, and final disposition of the case, when required by rule of court."

And the same court, in passing on the construction of paragraph 8, § 828, Rev. St., in U. S. v. Kurtz, 164 U. S. 50, 17 Sup. Ct. 15, 41 L. Ed. 347, relative to the making up of final records, holding such to be but an instrument, in connection with analogous entries to the one in litigation under this schedule, says:

"By his method of computation the clerk charges for each entry many of which are less than a dozen words in length, as for one hundred words.

This may be proper where the charge is made under the first clause of the paragraph, 'for entering any return, rule, order, etc.,' upon the journals of the court."

See, also, Cavender v. Cavender, 10 Fed. 828, 3 McCrary, 383. This question has been adjudicated before by this court. See Marsh v. U. S. (D. C.) 88 Fed. 879.

In view of these decisions, my attention has been called to a decision of the comptroller (In re Cowles, 5 Dec. Compt. 120), which, together with a former decision of the comptroller (In re Speed, 1 Bowler, 197), are the only cases I have been able to find bearing on this question. After reading the latter decision over carefully, I am unable to find any reference to the case of U. S. v. Kurtz, although the latter was decided in October, 1896, and the former case in September, 1898. The comptroller either was unacquainted with this case, or chose to ignore the latter clause in the Kurtz Case as obiter dicta; but, even conceding that such is the case, it seems to me that in a decision of as far-reaching consequence as this one of the comptroller, an opinion of the supreme court should be entitled to some consideration, or, at least, comment. In the Cowles Case the comptroller says:

"If the contention of the clerk, in the broad sense in which he asserts it, is correct, that he is entitled to a fee of 15 cents for every entry he may make in making up the record in a cause concerning a rule, return, order, continuance, judgment, decree, or recognizance, regardless of the number of words in such entry, then no meaning is attached whatever to the words, 'for each folio, fifteen cents.'"

The comptroller seems to misconstrue the meaning of the word "entry." In the making up of records, especially journal entries, the entry is the only evidence of a rule, order, return, etc. So far as the statute relative to fees is concerned, the entry is the thing itself. It is not an entry concerning a rule, but is the entry of the rule and order itself. It is certainly true that congress intended to attach meaning to these words.

In the practice of the court it has never been contended that a caption was essential to the separation of entries, in order to make such distinct and independent. The officers charging these fees have never admitted, and in reason could not admit, that because separate matters referring to or embodying separate proceedings were collected under a caption, merely descriptive of a cause then pending before the court, thereby fixed and solidified such entries into a single record. If such entries are properly separated into paragraphs, so that they can be distinguished as applicable to certain proceedings, they seem to me to be as separate and distinct as though the same caption were interpolated at the beginning of each of such entries. The comptroller seems to hinge his decision on the question of separate or common caption, but I am unable to see the nice distinction drawn by him. The commissioner's docket is to this court what the journal is to the clerk. The ruling of the supreme court is entirely applicable to all the facts relative to these items, and hence govern entirely. In the finding of facts filed in this cause a specimen of such docket entries is set out in full, taken

from an actual entry made, and to me fully bears out the contention of the petitioner relative to the separation of such entry.

Schedule B: Paragraph 3, § 847, Rev. St., provides, "for hearing and deciding on criminal charge, five dollars a day for the time necessarily employed." The statute does not provide any description of criminal charges such as are properly brought before a court, leaving the question for judicial interpretation. It is my opinion that when a prisoner is brought before a commissioner in accordance with law who stands charged with the commission of a criminal offense against the United States, and the commissioner is thereby called upon to exercise a judicial function of his office, in whatever manner this may be, whether to determine probable cause for binding him over, to admit him to bail, to discharge him on bond, or to commit him temporarily pending further investigation, he has thereby complied with the above provision, and is entitled to his per diem. When the district court is not in session, a commissioner may properly take jurisdiction to fix bail for a prisoner under arrest upon a bench warrant or capias issued upon an indictment found before a federal court; and if the deputy marshal who makes the arrest carries the man before the commissioner, it is the commissioner's duty to fix the amount of bail, and, in default of bond, to issue final mittimus, which act is clearly judicial. In U. S. v. Jones, 134 U. S. 483, 10 Sup. Ct. 615, 33 L. Ed. 1007, the supreme court held:

"The decision of a commissioner of the circuit court upon a motion for bail and the sufficiency thereof * * * are judicial acts, on the hearing and deciding of criminal charge, within the meaning of Rev. St. § 847, providing for per diem compensation."

See, also, Harper v. U. S., 21 Ct. Cl. 56, and Rand v. U. S. (D. C.) 36 Fed. 671.

And, indeed, this interpretation seems also to have been accepted by congress in framing the provision in the act of May 28, 1896, providing a new schedule of fees for the commissioners. It appears from the schedule that all these per diems were earned and charged before the proviso in said act became effective, to wit, July 1, 1897. Item 3 in said schedule differs from the other items in this: that it is claimed that a per diem is due the petitioner for the hearing on a continued hearing of a criminal charge then pending before him. The account states that the continuance was necessary to obtain the attendance of witnesses, and, in the absence of proof to the contrary, the court feels bound to allow this item.

In Schedule C the petitioner claims fees at the rate of 10 cents per folio for making copies of subpoenas issued for the attendance of witnesses before him in criminal cases pending and to be heard. Rule 6 of the rules of practice of this court provides:

"All process of this court shall be served by the marshal or his deputy in the same mode and manner that a like process of the state court is directed by law of the state of Florida to be served, unless a different mode of service is required by the laws of the United States or the rules of this court, * * * and the clerk shall, at the time of issuing every process, make as many copies of the same as there are persons to be served, marked "A true

copy," and the same shall be delivered to each and every person on whom service is made by the marshal or his deputy, and return thereof indorsed on the original writ, which shall speedily be returned into the clerk's office."

In the case cited above (U. S. v. Allred, 155 U. S. 591, 15 Sup. Ct. 231, 39 L. Ed. 273) the court held that the commissioner was an officer of the court which appointed him, and that "a commissioner is entitled to a fee for making and certifying copies of subpœna when required by rules of court." When the commissioner issues a subpœna, it is the process of the court, and is returned and filed by the clerk with all the papers. The contentions of the commissioner in issuing process are exactly analogous to those of the clerk, and although the above-quoted rule does not in terms apply to the commissioner, yet it seems a fair intent in framing these rules to provide that all process should be served by the marshal, who should receive with the original process as many copies as there were persons to be served, and I am of the opinion that the term "clerk" also means "commissioner." There is no other method in the state of Florida for making service of subpœna ad test., except by copy, and hence I conclude that the petitioner rightfully prepared these copies of subpœnas, and is entitled to charge therefor.

Schedule D: The petitioner claims compensation for filing and entering the return of process upon which no service had been effected in criminal cases in which warrants had been issued, but which were returned into the commissioner's court with such fact indorsed thereon. The return of a writ to the court or officer issuing the same is an act which does not depend on the varying circumstance of its execution. If an execution is returned "Nullum bonum," or the warrant or summons "Not found," this is a return; and a fee for the entry of such return and the filing of process is a proper claim. Faucett v. U. S., 26 Ct. Cl. 154; Marvin v. U. S. (C. C.) 44 Fed. 405; Goodrich v. U. S. (D. C.) 42 Fed. 392; Clough v. U. S. (C. C.) 47 Fed. 791; In re Gourdin (D. C.) 45 Fed. 842; Rand v. U. S. (D. C.) 48 Fed. 357; U. S. v. Rand, 3 C. C. A. 556, 53 Fed. 348; Hallett v. U. S. (C. C.) 63 Fed. 817; U. S. v. Ewing, 140 U. S. 142, 11 Sup. Ct. 743, 35 L. Ed. 388.

Schedule E: The petitioner claims fees for filing copies of complaints made before other commissioners, who had issued warrants thereon with said copies attached, and which were returned before the petitioner to be heard. This copy of the original affidavit is the foundation of the jurisdiction of a commissioner other than the one taking the affidavit. It is not properly a part of the warrant, but is merely attached to the warrant, in order to be kept with the same and go into the hands of the proper commissioner, who should then file the same, together with the return of the warrant, and proceed to dispose of the case. It is no contention on the part of the government that a filing fee of 10 cents for each paper in a case is not proper, and the same has been invariably allowed.

Schedule F: The petitioner claims fees for administering oaths to deputy marshals to accounts for services in cases disposed of before the petitioner prior to September 30, 1895, and for certificates to original and duplicate of each of said accounts. The petitioner claims that the same is according to practice then prevailing and the

regulations of the department of justice. The supreme court, in U. S. v. Allred, 155 U. S. 591, 15 Sup. Ct. 231, 39 L. Ed. 273, decided January 7, 1895, held that:

"A commissioner is entitled to his fee for administering oaths to deputy marshals to verify their accounts for services, when the regulations of the department of justice requires such officers to certify on oath that their accounts rendered to the marshal are correct."

As near as I can ascertain, it was some months after this before the department changed this regulation relative to the rendition of these accounts, and it went into effect after these fees had been earned; hence, under the ruling in the above case, these fees are proper.

In Schedule G the petitioner claims compensation for entering on his docket certain orders of continuance made in criminal cases disposed of before him. This charge seems to be in addition to the ordinary charge for entries in his docket as set out in Schedule A. I think such entries, where the order to that effect has been made, are very essential to the proper conduct of the case. The docket should certainly show such continuance, where the fees of witnesses, the deputy marshal, and the commissioner are to some extent dependent on such continuance, and the commissioner's fee therefor is proper under the ruling set out in Schedule A. See Heyward v. U. S. (D. C.) 37 Fed. 764.

In Schedule H the petitioner claims compensation for making copies of affidavits taken before him in criminal cases, which copies were attached to the warrants issued thereon, in order to give jurisdiction to hear the cause to the nearest commissioner to the place of arrest. The act of congress of August 18, 1894, says:

"It shall be the duty of the marshal, his deputy or other officers to take the defendant before the nearest circuit court commissioner * * * for a hearing, commitment or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint." 28 Stat. 416.

It makes little difference whether the commissioner was in doubt as to the place where arrest was to be effected, or whether he knew that the warrant would be returned to him. It should be the invariable practice of the commissioners to attach copies of the affidavit to the warrant, as a defendant fleeing from justice might then be returned by the deputy marshal, and, if arrest is effected within the judicial limits of his district, the prisoner may thereupon be taken before the nearest commissioner. This law seems mandatory upon the commissioner, and his fee for such copies at the rate of 10 cents per folio should be allowed.

In Schedule I the petitioner claims compensation for taking testimony and making transcript of same under rules of court in criminal cases disposed of before him, which were disallowed by the accounting officers, who alleged the same to be excessive; but, there being no showing to this effect, the oath of the petitioner and the approval of his accounts must be accepted as binding on this court, and this item will be allowed.

Among the items contended for by the petitioner in Schedule J is a fee for issuing separate commitments, where two or more persons

are arrested on the same warrant. The accounting officers contend that only one is necessary. There may be many circumstances which would render such commitment necessary or reasonable, and I am unwilling to lay down a rule for the guidance of the commissioners in this respect. It would be just as reasonable to say that all persons brought before a commissioner on any day should be committed under one commitment. I think this matter should be left within the sound discretion of the commissioner as a federal officer, and should not be open to review either by the accounting officers or the court, and the commissioner's fees for such commitments are allowed.

In item 2 the petitioner claims compensation for issuing two or more temporary commitments to hold the prisoner pending final examination. Where the further continuance is rendered necessary, the original temporary commitment is all that is necessary to hold the defendant, as he may be taken from the jail and remanded without further writ,—a temporary commitment not being fully executed until the final disposition of the case; and I think any further writ unnecessary.

In item 7 the petitioner had charged per diem and fees under provisions of section 847, Rev. St., in poor-convict cases. These items were disallowed, presumably on the theory (although not stated) that the act of May 28, 1896, prescribing a new set of fees for the new commissioners, went into effect July 1, 1896; but upon a casual reading of said act it clearly appears that the same is applicable to the new set of commissioners called "United States Commissioners," and took effect July 1, 1897; and during the interval from the time of its passage until said date the old commissioners should charge and receive compensation under said section of the Revised Statutes.

There are several other items which raise no question of law. This court has approved each of the said items in the current quarterly accounts as presented, and which now form part of the file and records of this court, and, as such order is prima facie evidence of the correctness of said items, in the absence of clear and unequivocal proof, on the part of the court should be conclusive. U. S. v. Jones, 134 U. S. 483, 10 Sup. Ct. 615, 33 L. Ed. 1007; Kinney v. U. S. (C. C.) 54 Fed. 313.