## UNITED STATES v. PULESTON.

### (Circuit Court of Appeals, Fifth Circuit. January 22, 1901.)

### No. 872.

1. UNITED STATES MARSHALS—SUIT FOR FEES—REVIEW OF FINDINGS ON APPEAL.

  The findings of a district court in a suit by a marshal against the United States to recover fees, brought under Act March 3, 1887 (24 Stat. 505), as to the correctness of the fees charged, will be held conclusive on appeal, in the absence of clear and unequivocal proof of mistake.

2. SAME—MILEAGE—CONSTRUCTION OF STATUTE.

  The provision of the sundry civil appropriation act of March 3, 1893 (27 Stat. 609), that "and hereafter no part of any money appropriated to pay any fees to the United States commissioners, marshals or clerks shall be used" in the payment of fees in internal revenue prosecutions, except in certain cases, and the following clause, requiring persons arrested to be taken before the nearest officer for hearing, and providing that "no mileage shall be allowed any officer violating the provisions hereof," was not merely a proviso restricting payments from the appropriation therein made, but was general legislation, furnishing rules for the government of the officers therein named until repealed; and a marshal who fails to take a prisoner before the nearest judicial officer for hearing violates its provisions, and is not entitled to mileage, notwithstanding the commissioner issuing the warrant has failed to comply with the requirement of the act by attaching thereto a certified copy of the complaint. The provision of the statute is absolute, and the courts are not authorized to ingraft exceptions upon it.

In Error to the District Court of the United States for the Northern District of Florida.

John Eagan and W. W. Howe, for the United States.

Buckler Chipley and Henry Bellinger, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge.   This is a suit brought by the marshal of the Northern district of Florida to recover from the United States amounts disallowed by the treasury department for certain fees and expenses.   The bill of particulars is made up of 14 schedules, embracing 165 items, varying in amounts from 12 cents to $46.80.   It is admitted "that all accounts claimed in this suit have been included in the current accounts of the petitioner, which accounts were duly sworn to, and presented to the court, and approved thereby; all of which appears by reference to the records of this court."   The case appears to have been thoroughly and exhaustively tried before the district court, and the trial judge has examined and considered every item with apparently the greatest care and patience, and has given his decision upon each, supported by reason and argument; all of which is found in the elaborate opinions printed in the transcript, and reported in 85 Fed. 570, and 88 Fed. 970 et seq.   His judgment was rendered for the plaintiff in the sum of $594.80, with interest until paid, together with $31.15 costs incurred.

In U. S. v. Jones, 134 U. S. 483, 10 Sup. Ct. 615, 33 L. Ed. 1007, it was held:

"The approval of a commissioner's account by a circuit court of the United States is prima facie evidence of its correctness, and, in the absence of clear and unequivocal proof of mistake on the part of the court, should be conclusive."

If this be the rule on the first examination and approval, no less stringent rule should be applied to the approval of the court after a contradictory examination and hearing, and, as we have carefully considered the case in this court, following with patience throughout the involved details, and fully considering the law involved, and found no clear and unequivocal proof of mistake, we think we are fully warranted in agreeing with the trial judge in all his allowances and conclusions, except as to items 11, 13, 15, 16, and 18 of Schedule A, claiming in the aggregate $132.40 for mileage in transporting prisoners arrested under commissioner's warrant to other than the nearest commissioner.

The act making appropriations for sundry civil expenses of the government for the fiscal year 1894 and for other purposes, approved March 3, 1893 (27 Stat. 609), contains the following:

"For fees of United States commissioners and justices of the peace acting as United States commissioners, one hundred thousand dollars. And hereafter no part of any money appropriated to pay any fees to the United States commissioners, marshals, or clerks shall be used for any warrant issued or arrest made, or other fees in prosecutions under the internal revenue laws, unless said fees have been taxed against and collected from the defendant, or unless the prosecution has been commenced upon a sworn complaint setting forth the facts constituting the offense and alleging them to be within the personal knowledge of the affiant, or upon a sworn complaint by a United States district attorney, collector or deputy collector of internal revenue or revenue agent, setting forth the facts upon information and belief, and approved either before or after such arrest by a circuit or district judge or the attorney of the United States in the district where the offense is alleged to have been committed or the indictment is found: provided, it shall be the duty of the marshal, his deputy, or other officer who may arrest a person charged with any crime or offense, to take the defendant before the commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint; and upon the arrest of the accused, the return of the warrant, with a copy of the complaint attached, shall confer jurisdiction upon such officer as fully as if the complaint had originally been made before him, and no mileage shall be allowed any officer violating the provisions hereof."

Substantially the same provision was enacted in the act making appropriations for the sundry civil expenses of the government for the fiscal year ending June 30, 1895, and approved August 18, 1894 (28 Stat. 416). We find no repetition of these provisions in any subsequent appropriation act.

The question presented is whether this legislation is general, furnishing rules for the general government of the clerks, commissioners, and marshals, or was particularly restricted to the expenses to be paid under the respective appropriation acts. One construction gives only trivial effect to the enactment, and the other gives it full effect.

The trial judge considers the language of the statute as a proviso, and quotes U. S. v. Ewing, 140 U. S. 148, 11 Sup. Ct. 743, 35

L. Ed. 388, where the question under consideration was as to whether
docket fees should be allowed, as follows:

"In the case of Minis v. U. S., 15 Pet. 423, 10 L. Ed. 791, it is said by Mr.
Justice Story (page 445, 15 Pet., and page 799, 10 L. Ed.): 'It would be
somewhat unusual to find ingrafted upon an act making special and temporary
appropriations any provison which was to have a general and permanent ap-
plication to all future appropriations. Nor ought such an intention on the
part of the legislature to be presumed, unless it is expressed in the most clear
and positive terms, and where the language admits of no other reasonable
interpretation. The office of a proviso, generally, is either to except something
from the enacting clause, or to qualify or restrain its generality, or to exclude
some possible ground of misinterpretation of it, as extending to cases not in-
tended by the legislature to be brought into its purview. A general rule, ap-
plicable to all future cases, would most naturally be expected to find its proper
place in some distinct and independent enactment.' * * * In the case
under consideration, if the proviso had been simply that commissioners should
not be entitled to any docket fees, we should have had little doubt that it
would be held as applying only to the $50,000 appropriated in the bill; but as
the proviso contains a substantial re-enactment of the clause of the Revised
Statutes (section 847), fixing the fees for similar services, with the prohibition
against docket fees tacked thereto as an amendment, we find it impossible to
give effect to the whole proviso, without construing it as expressing the in-
tention of congress to amend that clause of section 847."

The trial judge relies very strongly upon this in holding that the
alleged proviso above referred to only applies to the money appro-
priated in the particular act, and we recognize the force of the rea-
soning, but we think the present case must be distinguished. There
can be no question of the power of congress to enact general legis-
lation as a rider upon the appropriations in appropriation bills.
The practice has been too frequent and long-continued to be now
questioned, if it ever was questionable. As a conspicuous example,
we need only refer to the legislative, executive, and judicial appro-
priation act of 1896 (chapter 252, 29 Stat. 140, 179, et seq.), where
some 25 sections of general legislation are incorporated in the ap-
propriation bill regulating United States clerks, district attorneys,
marshals, deputy marshals, abolishing commissioners of United
States circuit courts, providing for United States commissioners,
regulating fees, and amending appropriation for relief of American
seamen, etc. Wherever such legislation occurs, the only question
can be as to the legislative intent. As to the matter inserted in
the appropriation act of 1893 above quoted, it is, we think, a mis-
nomer to call it a proviso. In the middle of the provision the word
"provided" is used, but the word "and" would do just as well, if not
better. The provision starts out with the words "And hereafter,"
meaning from the time of the passage of the act, and to continue for
an indefinite period. It therefore went into force four months be-
fore the moneys appropriated in the act were available. It provides
that no part of any money appropriated to pay any fees to United
States commissioners, marshals, or clerks shall be used, etc., ex-
cept in certain contingencies. It therefore clearly applies to mon-
eys appropriated by congress in other acts. When we come to that
part of the provision which particularly relates to the matter in
hand, we find that it provides rules for marshals and their deputies
in serving warrants, and expressly provides with regard to the duty

of the commissioner in issuing a warrant as to its requisites. It provides for the jurisdiction of other commissioners than the one issuing the warrant, and, in short, has all the marks of a general rule or regulation, to be observed until congress shall otherwise provide; considering which it seems highly improbable that congress intended all this as a mere temporary expedient, applicable only to the appropriation for a single year, when all the reasons exist, and will continue to exist, for making it a permanent regulation. See U. S. v. Ewing, 140 U. S. 149, 11 Sup. Ct. 743, 35 L. Ed. 388.

For these and many other reasons that might be given, we are clearly of opinion that the legislation was general, and that, as the marshal herein claims for mileage fees in cases where the persons arrested under the commissioner's warrants were not carried before the nearest commissioner, his claim must be disallowed, under the concluding provision of the law in question, "and no mileage shall be allowed any officer violating the provisions hereof." This precise question was before the circuit court in Maine in Saunders v. U. S., 73 Fed. 782, and the view herein taken was followed; and again was before the United States circuit court of appeals, Eighth circuit, in U. S. v. Donahower, 29 C. C. A. 342, 85 Fed. 547. In this last case the court seems to have considered the legislation as general, but otherwise held as follows:

"The circuit court finds as a fact that in each case included in this finding the warrant was not issued or made returnable before the circuit court commissioner before whom it was returnable, by the connivance, at the request, or with the knowledge of the petitioner, but came into his hands in the regular course of the business of his office, and was served and executed by him in obedience to its mandate; that it did not appear from the testimony that a certified copy of the complaint upon which each of the warrants was based was attached to the warrants; that in each case the mileage charged was actually and necessarily traveled by the plaintiff; and the several items included in the finding, amounting to $188.70, were therefore allowed. We think the items of this account were properly allowed by the circuit court. The finding of fact shows that in none of the cases included in the finding for which charges have been made was there attached to the warrant a certified copy of the complaint, which, under this statute, would be necessary to confer jurisdiction upon any nearer commissioner or magistrate before whom the marshal might take the person arrested. Without the certified copy of the complaint attached to the warrant, a commissioner or magistrate nearer the place of arrest than the commissioner issuing the warrant would be without jurisdiction to hear the case. As stated by the circuit court: 'The marshal would have to obey the warrant in its legal effect, and if no certified copy of the complaint was attached, to give jurisdiction to any other commissioner or magistrate, he would, the warrant so directing, be obliged to take the arrested person before the commissioner who issued the warrant.'"

With the greatest respect for the court, we cannot agree with the conclusion reached. The statute is so plain that it is the duty of the marshal or officer executing the warrant to take the person arrested before the nearest commissioner, and, in case of violation, that no mileage shall be allowed, that we cannot see our way clear to inject an exception in the statute. The statute requires that the commissioner shall attach a certified copy of the complaint to the warrant, and we have held, in the case of U. S. v. McGourin (just decided) 106 Fed. 288, that when a copy is so attached to the war-

rant the same makes only one paper. The proper decision of that case did not require further declaration on that line, but a very strong argument can be adduced to show that under the statute no warrant issued by a commissioner is sufficient to justify the marshal in making an arrest thereunder, unless it has attached thereto a certified copy of the complaint on which it is based. However this may be, under the law the certified copy is a proper and necessary part of the process, and certainly the mandate of the law as to where the return shall be made controls to the extent of determining the officer's right to claim mileage in executing the warrant. To hold otherwise would be to let the provisions of the law go for naught, because, although there may be no proof of any connivance between the marshal's deputies and the commissioner, it must not be forgotten that, if the commissioner issues the warrant without the certified copy of the complaint attached, it will result in bringing more grist to his mill, and more toll to him and to the marshal's deputies. In two of the items in question in this case, it is claimed that the district attorney directed the marshal to carry the prisoner otherwise than before the nearest commissioner. Of course, we can recognize no authority of the district attorney to make exceptions to the law. It is also urged, in some of these cases, that the result was a saving of expense to the United States. We are clear that this consideration cannot enter into the matter. Upon the whole case, we conclude that the judgment of the lower court should be amended by reducing the amount of recovery from $594.80 to $462.40, and as thus amended the decree should be affirmed; and it is so ordered.