## UNITED STATES *v.* ALLRED.

APPEAL FROM THE COURT OF CLAIMS.

No. 552. Submitted December 3, 1894. — Decided January 7, 1895.

A commissioner of a Circuit Court is an officer of the court, authorized by law, and is entitled to his fees in the following cases when certified by the court as correct:

(1) For entering on warrant the judgment of final disposition of a case, when required by rule of court;

(2) For making transcripts of proceedings, when required by rule of court, to be sent up to court;

(3) For making and certifying copies of subpœnas for marshal to serve on witnesses, when required by rule of court;

(4) For making report to clerk of court and commissioner of internal revenue of cases heard and disposed of under the internal revenue laws, when required by rule of court;

(5) For making entries on the docket in various cases of the name of an affiant, his official position, if any, date of issuing warrant, name of defendant and witnesses, and final disposition of the case, when required by rule of court.

He is also entitled to his fees for administering oaths to deputy marshals to verify their accounts of service, when the regulations of the Department of Justice require such officers to certify on oath that their accounts rendered to the marshal are correct.

THIS was a claim for fees as commissioner of the Circuit Court for the Northern District of Georgia. Appended to the petition was a statement of the items of the petitioner's account. The Court of Claims, upon the evidence, found the facts to be as follows:

1. The claimant, John M. Allred, was a commissioner of the Circuit Court of the United States for the Northern District of Georgia from May 28, 1889, to March 31, 1892, duly qualified and acting.

2. During said period he made up his accounts for services, duly verified, and presented the same to the United States court for approval in the presence of the district attorney, and an order approving the same as being just and according to law was entered of record. Said accounts were then pre-

sented to the accounting officers of the United States Treasury Department for payment. Part was paid, but payment of the items embraced in finding 3 was refused.

3. (1) For entering on warrant the judgment of final disposition of the case, as required by rule of court, one folio each, at 15 cents each, $53.55.

Rule 6 of the Circuit Court requiring this service is as follows: . . . "And, after holding an examination, he must enter in the blank on the back of the warrant his final action, in which, if bound or committed, he shall specify the particular offence or offences for which the party is held."

(2) For making transcript of proceedings in various cases, as required by rule of court, to be sent up to court, at 15 cents per folio, $62.65.

(3) For hearing and deciding on criminal charges in various cases where the proceedings consisted of taking bail and passing on the sufficiency thereof, six days, at $5.00 per day $30.00.

(4) For issuing separate warrants of arrest for certain defendants charged with separate and distinct offences committed at different times and places, at $1.00 each, entering return, 15 cents, and filing, 10 cents, $67.40.

(5) For drawing reports of attendance and mileage of witnesses, and orders for the marshal to pay each witness in duplicate, in excess of 60 cents in each case, and administering oath to witness, as to attendance and mileage, at 10 cents each, $37.00.

(6) For making copy of each subpœna for marshal to serve on the witness, at 10 cents per folio, with certificate, at 15 cents each as required by rule of court, $24.35.

(7) For issuing warrant of commitment of defendants to jail for further examination in default of bail, entering return of marshal, and filing same, at $1.25 each, $5.30.

The jailer would not receive a prisoner without a warrant of commitment, and the marshal had no place to confine the prisoner outside of the jail.

(8) For making report to clerk of court and Commissioner of Internal Revenue of cases heard and disposed of under the

internal revenue laws, as required by rule of court, at 15 cents per folio, $7.20.

(9) For administering oaths to deputy marshals to verify their accounts of service, as required by the Attorney General and accounting officers of the Treasury, at 10 cents each, and drawing jurats to same, at 19 cents, $18.25.

(10) For making entries on the docket in various cases, consisting of name of affiant, his official position, if any, date of issuing warrant, name of defendant and witnesses, and final disposition of case, as required by rule of court, at 15 cents per folio, $43.50.

(11) For filing and entering 131 separate papers filed in various cases, at 10 cents each, $13.10.

(12) For administering oaths to witnesses to testify in various cases, at 10 cents each, $4.40.

Upon the foregoing findings of fact the court determined as a conclusion of law that the claimant should recover, except for item 5 of finding 3, the sum of three hundred and twenty-nine dollars and seventy cents, ($329.70,) for which amount judgment was entered and defendant appealed.

*Mr. Assisiant Attorney General Dodge* and *Mr. Charles W. Russell* for appellants.

*Mr. Charles C. Lancaster* for appellee.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

Error is assigned only to the allowance of items 1, 2, 6, 8, 9, and 10 of the third finding.

1. All these items, except the ninth, relate to fees claimed to be authorized by a rule of the court requiring the service to be performed, and, therefore, allowable within the case of *United States* v. *Van Duzee,* 140 U. S. 169, 173. In that case we held, in reference to clerks' fees, that an order of court requiring a service to be performed was sufficient authority as between the clerk and the government for the performance of the service, and for the allowance of the proper fee there-

for. No question is made but that the services in question were performed in obedience to such an order.

A distinction, however, is claimed between the case of a clerk, who is strictly a subordinate officer of the court, and a commissioner, who, it is said, is a separate judicial officer, over whom the court has no control. Acting under the constitutional provision, Art. 2, Sec. 2, authorizing it to vest the appointment of inferior officers in courts of law, Congress provided, as early as 1793, for the appointment by Circuit Courts of "one or more discreet persons, learned in the law, in any district for which said court is holden," for the taking of bail for the appearance of persons charged with crime, which authority, however, was "revocable at the discretion of such court." These officers took the name of "Commissioners," and from time to time their duties were extended by different acts of Congress, until they have become an important feature of the Federal judicial system. The present authority for their appointment is found in Rev. Stat. § 627, which authorizes each Circuit Court to appoint, "in different parts of the district for which it is held, so many discreet persons as it may deem necessary, who shall be called 'commissioners of the Circuit Courts,' and shall exercise the powers which are or may be especially conferred by law upon commissioners of Circuit Courts." The authority given to the Circuit Courts by the original act of 1793, to revoke these appointments at the discretion of the court, is not found in the revision, but we held in *Ex parte Hennen*, 13 Pet. 230, that in the absence of a law fixing the tenure of an office, and of any statutory provision as to the removal of the officer, the power of removal was incident to the power of appointment. A similar construction has been given in other cases. *Blake* v. *United States*, 103 U. S. 227 ; *In re Eaves*, 30 Fed. Rep. 21.

The duties of these officers are prescribed by law, and they are, in general, to issue warrants for offences against the United States; to cause the offenders to be arrested and imprisoned, or bailed, for trial, and to order the removal of offenders to other districts, (Rev. Stat. § 1014;) to hold to

security of the peace and for good behavior, (§ 727;) to carry into effect the award or arbitration, or decree of any consul of any foreign nation; to sit as judge or arbitrator in such differences as may arise between the captains and crews of any vessels belonging to the nations whose interests are committed to his charge; and to enforce obedience by imprisonment until such award, arbitration, or decree is complied with, (§ 728;) to take bail and affidavits in civil causes, (§ 945;) to discharge poor convicts imprisoned for non-payment of fines, (§ 1042;) to take oaths and acknowledgments, (§ 1778;) to institute prosecutions under the laws relating to crimes against the elective franchise, and civil rights of citizens, and to appoint persons to execute warrants thereunder, (§§ 1982 to 1985;) to issue search warrants authorizing internal revenue officers to search premises, where a fraud upon the revenue has been committed, (§ 3462;) to issue warrants for deserting foreign seamen, (§ 5280;) to summon masters of vessels to appear before him and show cause why process should not issue against such vessel, (§ 4546;) to issue warrants for and examine persons charged with being fugitives from justice, (§§ 5270 and 5271,) and to take testimony and proofs of debt in bankruptcy proceedings, (§§ 5003 and 5076.)

While their duties are thus prescribed by law, and while they are, to a certain extent, independent in their statutory and judicial action, there is no law providing how their duties shall be performed; and so far as relates to their administrative action, we think they were intended to be subject to the orders and directions of the court appointing them. As was said by this court in *Griffin* v. *Thompson*, 2 How. 244, 257, "there is inherent in every court a power to supervise the conduct of its officers, and the execution of its judgments and process. Without this power courts would be wholly impotent and useless." While no express power is given over these officers by statute, their relations to the court are such that some power of this kind must be implied. Though not strictly officers of the court, they have always been considered in the same light as masters in chancery and registers in bankruptcy, and subject to its supervision and control.

What shall be the nature of the requirements in each particular case, must be left largely to the discretion of the court. Certainly we cannot presume that the court will abuse its discretion, or will act otherwise than is deemed conducive to the public good.

As the items in question were approved by court, they are presumptively correct, *United States* v. *Jones,* 134 U. S. 483, and the Court of Claims did not err in allowing them.

2. This ruling covers all but the 9th item, "for administering oaths to deputy marshals to verify their accounts of service, as required by the Attorney General, and the accounting officers of the Treasury."

In the case of *United States* v. *McDermott,* 140 U. S. 151, we held a commissioner and chief supervisor of elections to be entitled to fees for drawing affidavits of supervisors as to the actual performance of the services for which compensation was claimed by them, and for administering the oath and drawing the jurat to such affidavits, upon the ground that the Attorney General required these affidavits for the protection of the government, and that it was no more than right and just that it should pay for them. So also in *United States* v. *Van Duzee,* (140 U. S. 169, 171, item 3,) we held that where there was an express act of Congress requiring clerks, marshals, and district attorneys to render their accounts to the court, and to prove in open court by oath, to be attached to such account, that the service had been actually and necessarily performed, such officer had performed his duty by rendering his account in proper form to the court with proper affidavit or oath, and was not further concerned with the method of verification adopted by the government for its own convenience, and was not liable for the expense of entering the orders of approval of such accounts.

As the regulations of the Department of Justice require deputy marshals to certify on oath that the accounts rendered to the marshal are correct, we think this case is controlled by those above cited, and that the court committed no error in allowing the item.

The judgment of the court below is, therefore, *Affirmed.*